## Harrison, Appellant, *v.* Harrison.

Argued November 19, 1956. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, and CARR, JJ. (RHODES, P. J., and ERVIN, J., absent).

564

James R. Orr, with him William Wallace Booth, Kenneth P. Simon, and Reed, Smith, Shaw & McClay, for appellant.

John G. Masick, for appellee.

OPINION BY WOODSIDE, J., June 11, 1957:

This case involves an order of the court below (1) dismissing appellant's rules to show cause why an order granting appellee alimony pendente lite should not be vacated and the divorce actions of both parties should not be dismissed, and (2) granting alimony pendente lite, costs and counsel fees to appellee.

The case was heard in the court below on appellant's petition praying that an order of that court entered on February 1, 1954, should be vacated; and appellee's answer thereto; appellant's petition praying that his divorce action be dismissed at his cost, and appellee's answer thereto; appellee's petition for arrearages of alimony pendente lite, additional counsel fees and expenses and, appellant's answer thereto.

Sarah Elizabeth Harrison, appellee, and Elmer J. Harrison, appellant, were married on February 20, 1939. After their marriage, the parties resided in Pittsburgh, Pennsylvania, until January 11, 1952, when appellant moved to Florida, where he has since continued to reside.

On June 29, 1946, appellee filed a libel in divorce from bed and board against appellant in the Court of Common Pleas of Allegheny County. On September 12, 1946, appellant filed a libel for absolute divorce from appellee in the same court.

Judge WEISS, by order of February 1, 1954, required appellant to pay alimony pendente lite and counsel fees. Appellant complied with this order until September of 1954, at which time a Florida court entered a decree of permanent alimony, with the provisions of which appellant has fully complied. Neither of the Pennsylvania divorce actions has been heard on the merits.

On March 12, 1953, the appellant who then resided at Ft. Lauderdale, Florida for over a year, instituted an action for absolute divorce from appellee in the Circuit Court of the Eleventh Judicial District of Florida. Appellee was given notice by publication and registered mail of the Florida action. After consultation with her Pittsburgh counsel, appellee retained Florida counsel to represent her in the Florida proceedings, and a motion was filed in Florida by her counsel to stay or dismiss that proceeding because of appellant's pending Pennsylvania divorce action. After hearing the testimony of appellant and his Pittsburgh counsel, both of whom were cross-examined by appellee's Florida counsel, the Florida Circuit Court made an order denying the motion to stay and gave appellee 20 days within which to file an answer to the complaint. An answer to the complaint on the merits was filed by ap-

pellee's Florida counsel on June 18, 1953, appellee praying, inter alia, that if the court finds the equities to be with appellant, it would adjust the property rights of the parties and give her permanent alimony, costs and attorneys' fees. Appellee also filed a petition for writ of certiorari on the decision of her motion to stay with the Supreme Court of Florida, which court denied the petition.

On January 7, 1954, appellee filed a motion for temporary alimony, suit money, and attorneys' fees in the Florida proceedings which motion appellee supported by her affidavit. That court refused temporary alimony and suit money, but awarded appellee attorneys' fees. Upon appeal, the Florida Supreme Court ordered the denial of suit money reversed and directed the Circuit Court to set the amount reasonably required by appellee to present her defense. The Circuit Court thereafter awarded her suit money of $550.

On July 1, 1954, appellee's Florida counsel notified appellant that the depositions of eight witnesses for appellee would be taken in Pittsburgh, Pennsylvania, on July 14, 1954, for use in the Florida proceedings. The depositions were never taken because of the failure of appellee to cooperate with her counsel.

The Special Master appointed by the Florida Court, filed his report recommending the granting of a divorce, and the awarding of appellant's home in Pittsburgh and the sum of $150 a month permanent alimony to appellee. On September 2, 1954, the Circuit Court filed a final decree, inter alia, confirming the Special Master's report, granting appellant a divorce a vinculo matrimonii, and giving appellee permanent alimony. This final decree was not appealed. Appellant has complied with such decree by tendering appellee a deed to the property and sending her monthly checks of $150, which she has held but not cashed.

On September 23, 1954, appellant filed a petition in the Pennsylvania divorce action of appellee against him, setting forth the Florida decree and praying that the order of the Pennsylvania court requiring the payment of future alimony pendente lite be vacated and that appellee's divorce action be dismissed; the court issued a rule to show cause why the prayer of the petition should not be granted. At the same time, appellant filed a petition praying that his divorce action against appellee filed in Pennsylvania be dismissed at his cost for the same reason, and the court granted an appropriate rule to show cause. On November 29, 1954, appellee filed answers to the petitions, denying that the Florida divorce decree is a valid and enforceable decree entitled to full faith and credit in Pennsylvania, for the reason that the Florida court did not have jurisdiction of the parties or the subject matter.

Appellant no longer having complied with the lower court's order allowing alimony pendente lite after the Florida decree, the appellee filed, at both Pennsylvania divorce actions, a petition for arrearage of alimony pendente lite, additional counsel fees and expenses. Appellant filed an answer to the petition denying that he is in arrears in his alimony payments and submitting to the court's discretion the propriety and amount of additional counsel fees and expenses sought by appellee.

When the petitions of appellant and that of appellee were heard by the court below, it took the testimony of appellee, her Florida counsel and her Pittsburgh counsel, and it received other evidence, including an exemplified copy of the Florida divorce proceedings. On February 17, 1956, the court dismissed appellant's petitions and directed appellant to pay appellee the sum of $4,250 as arrearages, the sum of $250 a month from March 1, 1956, until the Pennsylvania divorce

litigation is terminated, the total of $110.80 for expenses and the sum of $15,000, less the sum of $1,500 previously paid, or a balance of $13,500 to appellee's counsel. The appeals to this Court are taken from this order.

"A decree of divorce of a sister state is prima facie valid and the burden is on the person attacking it to overcome the presumption of validity:" *Wallace v. Wallace,* 371 Pa. 404, 89 A. 2d 769 (1952).

Where a spouse appears in a divorce proceeding in a sister state, the spouse is barred from collaterally attacking the decree entered in that proceeding. As the Supreme Court of the United States said in *Cook v. Cook,* 342 U. S. 126, 72 S. Ct. 157, 96 L. Ed. 146 (1951), at page 149:

"If the defendant spouse appeared in the Florida proceedings and contested the issue of the wife's domicile (Sherrer v. Sherrer, 334 U. S. 343), or appeared and admitted her Florida domicile (Coe v. Coe, 334 U. S. 378), or was personally served in the divorce state (Johnson v. Muelberger, 340 U. S. 581, 587), he would be barred from attacking the decree collaterally; . . .

"But the burden of undermining the decree of a sister state 'rests heavily upon the assailant.' Williams v. North Carolina (325 U. S. 234, 89 L. Ed. 1584, 65 S. Ct. 1092, 157 A. L. R. 1366) ; Esenwein v. Commonwealth, 325 U. S. 279, 280-281. A judgment presumes jurisdiction over the subject matter and over the persons."

This principle was recognized by this Court in *Collins v. Collins,* 175 Pa. Superior Ct. 214, 103 A. 2d 494 (1954).

The appellee's contention that she did not enter a general appearance in the Florida divorce case is not borne out by the record before us. She first filed a motion to stay and dismiss the Florida divorce action

against her on the ground that there was a divorce action pending against her in Pennsylvania. This point she pursued through the Supreme Court of Florida. When she failed in this contention, she *filed an answer to the divorce action on the merits,* and, as she said in her pleadings, "having *fully* answered the complaint" (emphasis supplied), she prayed the Florida Court that her husband's complaint in divorce be dismissed, that the court award her temporary alimony, suit money, and attorneys' fees, and that if the divorce were to be granted, the property rights of the parties be adjusted, and she be awarded permanent alimony.

Now having been awarded permanent alimony and part of the appellant's property, she argues that she was not in court in Florida. The Florida record, which was admitted into the record by the court below on the matter now before us, proves she was in court.

Unless a party strictly limits himself to the issue of the jurisdiction of the court, which the appellee did not do, the decree of the court is binding on him in all respects. In *Aquilina v. Doan,* 374 Pa. 405, 409, 97 A. 2d 520 (1953) Justice CHIDSEY said, "Defendants chose not to confine themselves strictly to the issue of the jurisdiction of the court, and in addition set up a defense on the merits. Under such circumstances the defendants must be deemed to have submitted themselves to the jurisdiction of the court and are bound by its determination of the legal questions involved: (citing)"

The facts in the present case are similar to those in *Commonwealth v. Parker,* 59 Pa. Superior Ct. 74 (1915). There the wife obtained a support order in Pennsylvania where both were domiciled; the husband went to Nevada where he filed for divorce; though not personally served, the wife filed an answer asserting that her husband was not a bona fide resident of Ne-

vada and denying the charges in the bill; the Nevada court granted the divorce; the husband then filed a petition in Pennsylvania to set aside the support order because of the Nevada decree; the wife answered that Nevada never had jurisdiction over her and that her husband had never been a bona fide resident of that state. This Court held that, although the wife never personally appeared in Nevada, the divorce decree was binding and entitled to full faith and credit, quoting, inter alia, from *Swecker v. Reynolds,* 246 Pa. 197, 92 A. 76 (1914) as follows:

" 'It is a rule which obtains in most jurisdictions that any action on the part of the defendant, except to object to the jurisdiction, which recognized the case as in court, will amount to a general appearance. . . . It is obviously just and fair that if a party wishes to insist on the objection that he is not in court he must keep out for all purposes except to make that objection.' "

The Supreme Court of Florida said, with respect to its approval of the denial of appellee's motion to stay: "So the petitioner found herself a litigant in the chancery court in Florida over her protest." It thus held that by making the motion appellee had submitted herself to Florida jurisdiction. This is in accord with that court's holding that a special appearance together with a motion to quash amounted to a general appearance, *Gilhart v. Gilhart,* 155 Fla. 562, 20 So. 2d 905 (1945), and its holding that a special appearance, with a motion seeking an order to dismiss and the grant of suit money and counsel fees, resulted in a general appearance: *Sternberg v. Sternberg,* 139 Fla. 219, 190 So. 486 (1939).

The judgment of a court of competent jurisdiction must receive full faith and credit as to all matters in controversy, and those which, with proper diligence,

might have been interposed as a defense to the original action: *German Trust Co. v. Plotke,* 274 Pa. 483, 118 A. 508 (1922) ; *Hunt v. Snyder,* 261 Pa. 257, 104 A. 603 (1918) ; *Stewart v. Stewart,* 127 Pa. Superior Ct. 567, 193 A. 860 (1937). Appellee is precluded from attacking the Florida court's findings as to appellant's domicile, since she appeared in the Florida case and contested it. We might note, however, that the appellant votes in Florida and still lives there. This and other evidence indicates he was a bona fide resident of that state, and the courts thereof had jurisdiction of his divorce case.

There is no presumption that he is still a resident of Pennsylvania. The presumption referred to in *Alburger v. Alburger,* 138 Pa. Superior Ct. 339, 10 A. 2d 888 (1940) is not, as the appellee contends, applicable to this case, in which the basic question is the validity of a decree of a sister state. That decree is presumed valid.

The appellee having submitted to the Florida court the question of whether or not that proceeding should be stayed or dismissed because of appellant's pending Pennsylvania divorce suit, and that issue having been finally determined against her, appellee cannot relitigate that question in the Pennsylvania courts: *Davis v. Davis,* 305 U. S. 32, 83 L. Ed. 26 (1938) ; *Com. ex rel. Grill v. Grill,* 162 Pa. Superior Ct. 244, 57 A. 2d 585 (1948).

The Florida court having found that it had jurisdiction over the parties and the subject matter, and appellee having appeared in that proceeding through her pleadings and counsel's participation, the Florida decree in favor of appellant is entitled to full faith and credit under Article IV, Section 1 of the Constitution of the United States: *Fries v. Wiser,* 62 Pa. Superior Ct. 218 (1916) ; *Commonwealth v. Parker,* supra.

Since a valid divorce decree terminates the duty of a husband to support his wife, because of the termination of the marital relationship, *Commonwealth v. Petrosky*, 168 Pa. Superior Ct. 232, 77 A. 2d 647 (1951); *Commonwealth ex rel. DiDonato v. DiDonato*, 156 Pa. Superior Ct. 385, 40 A. 2d 892 (1945), the lower court erred in dismissing appellant's rule to show cause why the alimony pendente lite should not be vacated, it being stipulated that appellant had paid everything due under that order up to the date of the Florida decree.

The Florida divorce decree being valid, the lower court erred in dismissing appellant's petitions to dismiss the divorce suits brought in that court.

By her participation in the Florida proceedings, appellee caused appellant to pay $1,000 to her counsel, $550 in suit money for her to defend her rights, and the fee of the Special Master of $300. These amounts were determined as reasonable for attorneys' fees, suit money and costs in that proceeding.

The court below allowed the attorney fees for appellee's counsel fees in the amount of $15,000 to which it applied a credit of $1500 already paid, and expenses in the amount of $110.80 advanced by one of her attorneys. There is no doubt that appellee's counsel spent many hours in representing her. In addition to the two Pennsylvania divorce cases, there was the Florida divorce case, a suit to set aside an antenuptial agreement, and an equity proceeding. It was understandably difficult to separate the time put on each of these different matters, and it appears to us that the court below allowed sufficient counsel fees to cover all of this service. Of course, the court had no authority to allow counsel fees for the suit to set aside the antenuptial agreement or the equity proceedings. Furthermore, counsel fees were allowed by the Florida court in the divorce proceedings in that state.

The lower court could find from the evidence before it that the appellant had a gross income of approximately $14,000 and a gross estate of approximately $190,000, including the house in Pittsburgh awarded to his wife in the Florida divorce proceedings. He is 73 years of age and retired.

Counsel for appellee in attempting to justify these fees have cited *DeFrancesco v. DeFrancesco*, 179 Pa. Superior Ct. 106, 115 A. 2d 411 (1955), in which $2800 was allowed; *Lynn v. Lynn (No. 2)*, 76 Pa. Superior Ct. 440 (1921), in which $7500 was allowed and *Albrecht v. Albrecht*, 175 Pa. Superior Ct. 650, 107 A. 2d 209 (1954), in which $2550 was allowed.

We are all of the opinion that the amount of counsel fees allowed by the court below was excessive, and that the highest amount that we could affirm would be $7500, to which the credit of $1500 should be applied.

The allowance of expenses of $110.80 will be affirmed except as to $25 allowed for service of process in the wife's equity suit.

The order of the court below of February 17, 1956 is reversed, and the record is remanded to that court with direction to

(1) vacate its order of February 1, 1954, and paragraphs 3 and 4 of its order of February 17, 1956, which direct payments of alimony;

(2) dismiss the divorce action of Elmer J. Harrison v. Sarah Elizabeth Harrison at appellant's cost;

(3) modify its order for expenses to be paid by Elmer J. Harrison to John G. Masich, Esq., from $110.80 to $85.80;

(4) modify its allowance of counsel fees from $15,000 less $1500 already paid, to $7500 less $1500 already paid, or a balance of $6000.

(5) dismiss the divorce action of Sarah Elizabeth Harrison v. Elmer J. Harrison, at appellant's cost.